# United States District Court
**EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | |
|---|---|
| R2 SOLUTIONS LLC, § <br> § <br> *Plaintiff*, § <br> §    Civil Action No. 4:22-CV-00537 <br> v. §    Judge Mazzant <br> § <br> ALLEGIANT TRAVEL COMPANY, § <br> § <br> *Defendant*. § <br> § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Defendant Allegiant Travel Company's Motion to Dismiss Plaintiff R2 Solutions LLC's Complaint (Dkt. #10). Having considered the motion, the response, and the relevant pleadings, the Court finds that the motion should be **DENIED**.[1]

## BACKGROUND

This contractual dispute arises from patent licensing negotiations gone awry. Plaintiff R2 Solutions LLC ("R2") is a Texas limited liability company with its principal place of business in Frisco, Texas (Dkt. #2 ¶ 3). Defendant Allegiant Travel Company ("Allegiant") is a Nevada corporation with its principal place of business in Las Vegas, Nevada (Dkt. #2 ¶ 4).

**I.**     **Licensing Negotiations**

R2 first contacted Allegiant regarding licensing opportunities in June 2021 (Dkt. #2 ¶ 10). After four months with no response, R2 sent a pair of follow-up emails to Allegiant in October 2021 (Dkt. #2 ¶ 10). Allegiant then responded through its general counsel, and the parties engaged in protracted licensing discussions (Dkt. #10 at p. 10).

---

[1] This Order addresses Allegiant's arguments concerning the lack of personal jurisdiction and improper venue. The Court will address Allegiant's argument concerning the first-to-file rule in a separate order.

As a part of those discussions, R2 and Allegiant negotiated a confidentiality agreement (the "Agreement") (Dkt. #2 ¶ 1). After executing the Agreement, R2 sent more detailed communications to Allegiant, which included specific patents from R2's portfolio that it considered relevant to Allegiant's operations and claim charts mapping the disclosed patents to specific Allegiant products and services (Dkt. #2 ¶ 14). R2 also referred to several pending cases in which it has asserted the same patents that it disclosed to Allegiant (Dkt. #10 at p. 11).

## II. The Nevada Action

Following several months of fruitless licensing discussions, Allegiant sought a declaratory judgment of non-infringement in the United States District Court for the District of Nevada on May 24, 2022. *Allegiant Travel Co. v. R2 Solutions LLC*, 2:22-CV-00828 (D. Nev. May 24, 2022) (the "Nevada Action").[2] R2 responded on July 14, 2022, moving to dismiss the Nevada Action on three separate grounds (No. 2:22-CV-00828, Dkt. #26). First, R2 contends that the Nevada court lacks subject-matter jurisdiction over Allegiant's request for declaratory relief because Allegiant's complaint is improperly based on information that is confidential under the Agreement (No. 2:22-CV-00828, Dkt. #26 at pp. 12–13). Second, R2 contends that the Nevada court should exercise its discretion under the Declaratory Judgment Act and dismiss the case as an improper anticipatory filing, arguing that Allegiant brought the case solely to gain a tactical advantage in licensing negotiations (No. 2:22-CV-00828, Dkt. #26 at pp. 19–21). And finally, R2 argues that it is not subject to personal jurisdiction in Nevada (No. 2:22-CV-00828, Dkt. #26 at pp. 21–26). R2's motion to dismiss in the Nevada Action remains pending.

---

[2] The Court takes judicial notice of the docket entries and judicial documents filed in the Nevada Action. *See Polnac v. City of Sulphur Springs*, 555 F. Supp. 3d 309, 327 (E.D. Tex. 2021) ("Documents in judicial actions and cases' dockets are public records of which any court can take judicial notice.") (internal citations omitted); *see also* FED. R. EVID. 201. The Court will refer to any filings in the Nevada Action by its case number (No. 2:22-CV-00828) and the appropriate docket entry.

### III. Procedural History

In addition to its motion to dismiss in the Nevada Action, R2 responded to Allegiant's complaint for declaratory relief by filing the current case on June 28, 2022 (Dkt. #2). R2 asserts a single cause of action for breach of contract, alleging that Allegiant breached the Agreement when it filed the Nevada Action because Allegiant's complaint discloses R2's confidential information (Dkt. #2 ¶¶ 18–26). On August 19, 2022, Allegiant moved to dismiss this case for lack of personal jurisdiction and improper venue, or, alternatively, to transfer it to the District of Nevada under the first-to-file rule (Dkt. #10). R2 responded on September 16, 2022 (Dkt. #19). Allegiant filed a reply on September 30, 2022, and R2 filed its sur-reply one week later (Dkt. #24; Dkt. #31).

On April 18, 2023, the Court held a status conference with the parties concerning the parties' pending motions. Consistent with the Court's statements in that status conference, this Order addresses the portions of Allegiant's motion to dismiss involving personal jurisdiction and improper venue (Dkt. #10). The Court will address Allegiant's arguments regarding the first-to-file rule in a separate order.

## LEGAL STANDARD

### I. Personal Jurisdiction

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant. FED. R. CIV. P. 12(b)(2). After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists. *See, e.g.*, *Luv N' Care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 469 (5th Cir. 2006).

To satisfy that burden, the party seeking to invoke the Court's jurisdiction must "present sufficient facts as to make out only a *prima facie* case supporting jurisdiction," if a court rules on

a motion without an evidentiary hearing. *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000). When considering the motion to dismiss, courts take allegations in a plaintiff's complaint as true except to the extent that they are contradicted by defendant's affidavits. *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)).[3] That is, courts accept a plaintiff's non-conclusory, uncontroverted allegations as true, and resolve factual conflicts contained in the parties' affidavits in the plaintiff's favor. *See, e.g.*, *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 868 (5th Cir. 2001).

## II.     Improper Venue

A party may challenge venue by asserting that venue is improper in a responsive pleading or by filing a motion. FED. R. CIV. P. 12(b)(3). The Fifth Circuit has yet to indicate which party bears the burden on a Rule 12(b)(3) motion, but "most district courts within this circuit have imposed the burden of proving that venue is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum." *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017) (collecting cases); *see also Provitas, LLC v. Quality Ingredients Corp.*, No. 4:21-CV-00196, 2021 WL 5907790, at *7 (E.D. Tex. Dec. 14, 2021) ("Once a defendant raises improper venue by motion, the burden of sustaining venue will be on the plaintiff") (cleaned up). A plaintiff may satisfy this burden by showing facts that, if taken as true, establish that venue is proper. *Provitas*, 2021 WL 5907790, at *7. The Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield v. Sallyport Glob. Holdings,*

---

[3] Of course, in determining whether it has personal jurisdiction, the Court may consider the entire contents of the record before it. *See, e.g.*, *Quick Techs., Inc. v. Sage Grp. PLC*, 313 F.3d 338, 343–44 (5th Cir. 2002) ("In making its [personal jurisdiction] determination, the district court may consider the contents of the record before the court at the time of the motion, including affidavits, interrogatories, depositions, oral testimony, or any combination of the recognized methods of discovery") (internal quotations omitted).

*Inc.*, No. 6:16-CV-459, 2014 WL 978685 at *1 (E.D. Tex. Mar. 5, 2014) (citing *Ambraco, Inc. v. Bossclip, B.V.*, 570 F.3d 233, 237–38 (5th Cir. 2009)).

A court may decide whether venue is proper based upon "(1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ambraco*, 570 F.3d at 238 (quoting *Ginter ex rel. Ballard v. Belcher, Prendergast & Laport*, 536 F.3d 439, 449 (5th Cir. 2008)).

Additionally, when resolving the matter on the pleadings, the Court "must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Mayfield*, 2014 WL 978685, at *1 (citing *Ambraco*, 570 F.3d at 237–38). If venue is improper, the Court must dismiss the case, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); Fed. R. Civ. P. 12(b)(3).

## ANALYSIS

Allegiant seeks to dismiss or transfer this case on three separate grounds (Dkt. #10). First, Allegiant argues that it is not subject to the Court's personal jurisdiction (Dkt. #10 at p. 11). Second, Allegiant argues that this case should be dismissed or transferred to the District of Nevada because venue is improper in the Eastern District of Texas (Dkt. #10 at p. 18). And finally, Allegiant argues that the first-to-file applies here, and that this case must be transferred to the District of Nevada as a result (Dkt. #10 at p. 19). The Court rejects both of Allegiant's arguments for dismissal. As noted above, the Court will address Allegiant's contention that the first-to-file rule applies in a separate order.

### I. Personal Jurisdiction

Allegiant first asks the Court to dismiss R2's claim for lack of personal jurisdiction under

5

Federal Rule of Civil Procedure 12(b)(2) (Dkt. #10 at p. 11). The standard for establishing personal jurisdiction in diversity actions like this one is well settled. A federal court sitting in diversity may exercise personal jurisdiction only to the extent permitted to a state court under state law. *Paz v. Brush Engineered Materials, Inc.*, 445 F.3d 809, 812 (5th Cir. 2006). This means that the Court must first decide whether the Texas long-arm statute confers personal jurisdiction over the defendant. *Id.* The Court must then determine whether the exercise of personal jurisdiction is consistent with due process under the United States Constitution. *Id.* The Texas long-arm statute confers jurisdiction to the limits of due process under the Constitution. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; *Command-Aire Corp. v. Ont. Mech. Sales and Serv. Inc.*, 963 F.2d 90, 93 (5th Cir. 1992). The sole question, then, is whether the exercise of personal jurisdiction over Allegiant offends or comports with federal constitutional guarantees. *See Bullion v. Gillespie*, 895 F.2d 213, 216 (5th Cir. 1990).

The Due Process Clause permits the exercise of personal jurisdiction over a non-resident defendant when the defendant has established minimum contacts with the forum state "such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). Those minimum contacts can "be established either through contacts sufficient to assert specific jurisdiction, or contacts sufficient to assert general jurisdiction." *See, e.g.*, *Frank v. P N K (Lake Charles) L.L.C.*, 947 F.3d 331, 336 (5th Cir. 2020). Specific jurisdiction exists only when the plaintiff's claim against a non-resident defendant arises out of or relates to activities that the defendant purposefully directed at the forum state. *Alpine View Co.*, 205 F.3d at 215 (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Likewise, general jurisdiction exists only when the defendant's contacts with the forum are so "'continuous and systematic' as to render them essentially at home in the forum

State." *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations., S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

R2 does not contend that Allegiant is subject to general jurisdiction in Texas (Dkt. #19 at p. 11 n.2). Thus, as it pertains to personal jurisdiction, the only issue before the Court is whether Allegiant is subject to specific jurisdiction in Texas.

### A. Specific Jurisdiction

In considering whether the exercise of specific jurisdiction comports with the Due Process Clause, the Court considers three factors:

> (1) whether the defendant has minimum contacts with the forum state, *i.e.*, whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.

*Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 193 (5th Cir. 2019) (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d. 266, 271 (5th Cir. 2006)). For there to be minimum contacts, a defendant must have "purposefully availed" itself of the benefits and protections of the forum state such that it "should reasonably anticipate being haled into court there." *Id.* at 193 (internal quotations omitted). The purposeful availment requirement is the "constitutional touchstone" of specific jurisdiction. *Burger King*, 471 U.S. at 474. In addition, "the *suit* must arise out of or relate to the defendant's contacts with the *forum*." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1780 (2017) (cleaned up) (emphasis in original). That is, in determining whether specific jurisdiction is proper, the Court's focus is on "the relationship between the defendant, the forum, and the litigation." *In re Chinese-Manufactured Drywall Products Liab. Litig.*, 753 F.3d 521, 529 (5th Cir. 2014). If the plaintiff successfully satisfies the first two prongs of the specific jurisdiction analysis, "the burden shifts to the defendant to defeat

jurisdiction by showing that its exercise would be unfair or unreasonable." *Seiferth*, 472 F.3d at 271. "It is rare to say the assertion of jurisdiction is unfair after minimum contacts have been shown." *McFadin v. Gerber*, 587 F.3d 753, 760 (5th Cir. 2009).

### 1. Minimum Contacts

The "minimum contacts" inquiry is fact intensive and seeks to identify conduct indicating that the defendant should reasonably anticipate being haled into court in the forum state. *Luv N' Care*, 438 F.3d at 470. This inquiry is also claim specific, and, in the context of breach of contract claims, courts focus on those acts which relate to the formation of the contract and the subsequent breach. *See Religious Tech. Ctr. v. Liebreich*, 339 F.3d 369, 375 (5th Cir. 2003). It is for this reason that, to determine whether a party to a breach of contract action purposefully availed itself of a forum, "a court must evaluate 'prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing." *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir. 1999) (quoting *Burger King Corp.*, 471 U.S. at 478–79) (cleaned up).

To be sure, the simple act of contracting with an out-of-state party, without more, is insufficient to establish minimum contacts. *Id.* That said, a party purposefully avails itself of a forum when it takes intentional steps to affiliate itself with a forum-state resident "with the aim of establishing a long-term association with that resident and with the foreseeable and intended result of causing economic activity within the forum state." *Cent. Freight Lines Inc. v. APA Transp. Corp.*, 322 F.3d 376, 383 (5th Cir. 2003); *Command-Aire Corp.*, 963 F.3d at 95 (finding that out-of-state defendant availed itself of doing business in Texas because it had an "ongoing relationship" with a Texas-based company).

As an initial matter, Allegiant contends that its negotiations with Allegiant concerning the Agreement do not establish any contacts with Texas because it dealt with R2 officers who were

8

based in California while negotiating and executing the Agreement (Dkt. #10 at p. 16). But, as the United States Court of Appeals for the Federal Circuit has previously noted, "[t]o sanction this argument [the Court] must both ignore basic principles of agency law and exalt form over substance in an area where the Supreme Court generally has cautioned against such an approach." *Akro Corp. v. Luker*, 45 F.3d 1541, 1546 (Fed. Cir. 1995) (citing *Burger King*, 471 U.S. at 478–79) (internal quotations omitted). Instead, the Court will follow the commonsense approach endorsed by the United States Court of Appeals for the Fifth Circuit and treat a communication to a company's officer as one that is directed to the company at its headquarters, not the location of the officer. *Fintech Fund, F.L.P. v. Horne*, 836 F. App'x 215, 220–21 (5th Cir. 2020) (affirming the district court's conclusion that communications to a company's representative are directed to the company irrespective of the representative's location).

   R2 argues that, through its communications to Texas, Allegiant deliberately reached out to this forum with the deliberate aim of entering into a contractual relationship with R2 (Dkt. #19 at p. 13). In support of this argument, R2 cites the Fifth Circuit's decision in *Central Freight*. *See* 322 F.3d at 382. In that case, two freight delivery companies—one based in Texas, and one based in New Jersey—entered into an "interline agreement" stating that each company could use the other's services in the other's primary region of operation. *Id.* at 379. The parties primarily negotiated their agreement by phone and by mail, apart from one visit to Texas by two representatives of the New Jersey company. *Id.* at 382. In the course of performance, the Texas company shipped some goods through the New Jersey company's terminal, but the New Jersey company never shipped anything to Texas. *Id.* at 379. The Fifth Circuit nonetheless held that the New Jersey company was subject to personal jurisdiction in Texas. *Id.* at 385. Rather than emphasizing the place of performance, the Fifth Circuit focused on the fact that, in the course of

9

negotiations, the New Jersey company "specifically and deliberately reached out" to the Texas company by telephone and mail with the deliberate aim of entering into a contractual relationship. *Id.* at 382 (internal quotations omitted). In so doing, the New Jersey company knowingly affiliated itself with an enterprise based primarily in Texas. *Id.* For these reasons, the Fifth Circuit reversed the district court's dismissal for lack of personal jurisdiction, concluding that the New Jersey company took purposeful and affirmative action by entering into the interline agreement, which had the "clearly foreseeable" effect of causing business activity in the forum state. *Id.*

The same facts that compelled the Fifth Circuit's conclusion in *Central Freight* are present here. Although it never sent its representatives to Texas, Allegiant also "purposefully and deliberately" reached out to this state while negotiating the Agreement. *Id.* at 382. Specifically, Allegiant reached out to Texas via phone and email multiple times for the purpose of negotiating the Agreement (Dkt. #19 at p. 13). It undertook those negotiations with the specific aim of engaging R2 in an ongoing relationship of confidentiality to further the parties' licensing discussions (Dkt. #2 ¶ 10). In so doing, Allegiant took "purposeful and affirmative" action that had the clearly foreseeable effect of causing business activity in this state. *Cent. Freight*, 322 F.3d at 382.

And so, the Court finds that Allegiant has sufficient minimum contacts with Texas because it purposefully availed itself of the benefits and protections of this state when it intentionally reached out to R2—a Texas-based company—to negotiate, and ultimately execute, the Agreement.[4] *Id.*

---

[4] Allegiant maintains that it could not have reasonably anticipated being haled into court in Texas because it refused to agree to a confidentiality agreement with a Texas governing law provision (Dkt. #10 at p. 16). According to Allegiant, the Agreement has no governing law provision because it refused to enter into a confidentiality agreement containing a governing law provision for any jurisdiction other than Nevada (Dkt. #10 at p. 17). But, as the Fifth Circuit has explained, the absence of a governing law provision has no impact on the personal jurisdiction analysis. *Danziger & De Llano, L.L.P. v. Morgan Verkamp, L.L.C.*, 24 F.4th 491, 502 n.5 (5th Cir. 2022). Although a governing law provision specifying a non-Texas forum might indicate that Texas courts do not have personal jurisdiction over

##        2.       Relatedness

Due process also requires that "the litigation results from alleged injuries that 'arise out of or relate to'" the activities associated with the availment. *Burger King*, 471 U.S. at 472–73. A court may exercise specific jurisdiction over a non-resident defendant only when a "sufficient nexus" exists "between the [defendant]'s contacts with the forum and the cause of action." *Clemens v. McNamee*, 615 F.3d 374, 378–79 (5th Cir. 2010). As the Supreme Court has recently clarified, "arise out of" and "relate to" are two separate methods of evaluating the connection between forum and controversy. *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) ("[O]ur most common formulation of the rule demands that the suit arise out of *or relate* to the defendant's contacts with the forum. The first half of that standard asks about causation; but the back half, after the 'or,' contemplates that some relationships will support jurisdiction without a causal showing.") (internal citations omitted) (emphasis in original).

R2's claim for breach of contract necessarily arises out of and relates to Allegiant's contacts with Texas. After all, but for Allegiant reaching out to R2's Texas headquarters in the negotiation process, the Agreement likely would not have been executed in the first place. In addition, R2 specifically contends that Allegiant's alleged breach of the Agreement caused R2 to suffer harm in Texas (Dkt. #2 ¶ 6). For these reasons, the Court is satisfied that R2 has alleged a sufficient nexus between its breach of contract claim and Allegiant's Texas contacts. *Cf. Inmar Rx Sols., Inc. v. Devos, Ltd.*, 786 F. App'x 445, 449–50 (5th Cir. 2019).

##        3.       Fair Play and Substantial Justice

Because R2 has made a *prima facie* showing of minimum contacts, Allegiant must show

---

the defendant, the absence of such a provision gives the defendant neither "specific notice that it might be amenable to suit in Texas" nor "reason to think that it could not be haled into court in Texas." *Id.* (quoting *Cent. Freight*, 322 F.3d at 383).

that the exercise of personal jurisdiction would violate the notions of "fair play" and "substantial justice." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 343 (5th Cir. 2004). Put differently, Allegiant must make a "compelling case" that the assertion of jurisdiction would not be fair or reasonable. *Burger King Corp.*, 471 U.S. at 477. In general, it is highly uncommon for an exercise of personal jurisdiction to be unfair if minimum contacts have been established—the "fair play and substantial justice" factor is rarely outcome determinative. *See, e.g.*, *Elevacity U.S., LLC v. Schweda*, No. 4:22-CV-00042, 2022 WL 3704537, at *10 (E.D. Tex. Aug. 26, 2022). This case is no exception.

In making this determination, the Court considers the following factors: (1) the burden upon the non-resident defendant; (2) the interests of the forum state; (3) the plaintiff's interest in securing relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interests of the several States in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 477.

Allegiant does not address the majority of these factors, arguing instead that it would be unreasonable for the Court to exercise personal jurisdiction here because this litigation overlaps with the Nevada Action and because "none of the witnesses or documents are located in Texas" (Dkt. #10 at p. 18). The Court finds both arguments unpersuasive. Even if the first-to-file rule applies and the District of Nevada "is a marginally more efficient forum for resolution of these claims at this point, asserting personal jurisdiction over [Allegiant] in this case would not seem to be unconstitutionally offensive to traditional notions of fair play and substantial justice." *Cent. Freight*, 322 F.3d at 384–85. Likewise, Allegiant offers no support for its contention that "none of the witnesses or documents are located in Texas," and at least some of the relevant R2 witnesses are located here (Dkt. #19 at p. 10). Nor does Allegiant dispute the notion that Texas has an interest

in adjudicating claims regarding its citizens. *See, e.g.*, *Long v. Grafton Executive Search, LLC*, 263 F. Supp. 2d 1085, 1090 (N.D. Tex. 2003) ("Texas has a substantial interest in redressing the injuries of its citizens.").

Considering the relevant factors and the steep burden faced by Allegiant, the Court finds that Allegiant has not made a compelling case that the Court's exercise of personal jurisdiction is unreasonable. As a result, the Court rejects Allegiant's argument that the exercise of personal jurisdiction is improper here.

**II.     Venue**

Allegiant also asks the Court to dismiss R2's claims for improper venue under Federal Rule of Civil Procedure 12(b)(3), asserting that the Eastern District of Texas is not a proper venue for this suit (Dkt. #10 at p. 18). If venue is improper, the court must dismiss, "or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); FED. R. CIV. P. 12(b)(3).

As to venue generally, 28 U.S.C. § 1391(b) provides that:

A civil action may be brought in—

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Venue is proper if any of the three categories are satisfied, although, by its terms, § 1391(b)(3) is the "fallback option." *Atl. Marine Constr. Co., Inc. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 55–56 (2013). Because Allegiant is a corporation, for venue purposes, it

13

resides "in any judicial district in which [it] is subject to the court's personal jurisdiction with respect to the civil action in question." 28 U.S.C. § 1391(c)(2).

R2 asserts that venue is proper in the Eastern District of Texas under both § 1391(b)(1) and (b)(2) (Dkt. #2 ¶ 8).  Having already determined that Allegiant is subject to the Court's personal jurisdiction in this litigation, the Court agrees with R2's assertion that venue is proper here under § 1391(b)(1).  For this reason, the Court also rejects Allegiant's argument that venue is improper in the Eastern District of Texas.  *See Palmer v. Idalia Llorens Collection Agency, Inc.*, 434 F. Supp. 3d 462, 473 (E.D. Tex. 2020).

## CONCLUSION

It is therefore **ORDERED** that Defendant's Motion to Dismiss Plaintiff R2 Solutions LLC's Complaint for lack of personal jurisdiction and improper venue (Dkt. #10) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 24th day of April, 2023.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE